NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ARIEL BERMUDEZ, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 15-3567 (MAS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEPHEN M. D'ILIO and ATTORNEY | : | |
| GENERAL OF THE STATE OF | : | |
| NEW JERSEY, *et al.*, | : | |
| | : | |
| Respondents. | : | |

**SHIPP, District Judge**

## I. INTRODUCTION

This matter comes before the Court on the Petition for Writ of Habeas Corpus ("Petition")
of pro se petitioner Ariel Bermudez ("Petitioner") for relief under 28 U.S.C. § 2254. (ECF No. 1.)
Petitioner is presently confined at New Jersey State Prison ("NJSP") in Trenton, New Jersey. (*Id.*
at 1, 20.) Respondents answered (ECF No. 4) and Petitioner replied (ECF No. 5). In addition, the
Court permitted the parties to expand the record. (ECF No. 6.) For the reasons explained in this
Opinion, the Court: (1) will, as to Ground One and as detailed in Section IV(A) below, conduct an
evidentiary hearing on the limited issue of trial counsel's advice to Petitioner before October 28,
2005 regarding his extended term under the Graves Act, N.J. Stat. Ann. § 2C:44-3(d) ("Graves
Act"), and (2) denies Ground Two of the Petition in its entirety.

## II.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.   Trial, Direct Appeal, and Post-Conviction Relief ("PCR")

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[1] will reproduce the recitation of facts as set forth by the Appellate Division of the Superior Court of New Jersey in *State v. Bermudez*, No. A-2684-12T2, slip op. at 1-5, ECF No. 4-15 (N.J. Super. Ct. App. Div. Oct. 31, 2014) ("*Bermudez II*"). The *Bermudez II* court affirmed the August 8, 2012 denial of Petitioner's PCR application by the Law Division of the Superior Court of New Jersey.

The *Bermudez II* court discerned the following facts from the record on appeal:

A grand jury indicted Petitioner on multiple robbery and related weapons offenses.[2] In a separate indictment, Petitioner was indicted for theft offenses.[3]

The State made a plea offer of a twenty-year term of imprisonment with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act ("NERA"), N.J. Stat. Ann. § 2C:43-7.2. The State and trial counsel advised Petitioner the offer would be withdrawn if he proceeded with a motion to suppress two handguns found in a motel room where he was staying

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

[2] Third-degree conspiracy to commit armed robbery; three counts of third-degree unlawful possession of a weapon, N.J. Stat. Ann. § 2C:38-5(b); third-degree possession of a weapon for an unlawful purpose, N.J. Stat. Ann. § 2C:39-4(a); fourth-degree aggravated assault, N.J. Stat. Ann. § 2C:12-1(b)(4); first-degree armed robbery, N.J. Stat. Ann. § 2C:15-l; first-degree complicity to commit armed robbery, N.J. Stat. Ann. § 2C: 15-1 and § 2C: 2-6; two counts of second-degree certain persons not to have weapons, N.J. Stat. Ann. § 2C:39-7(b); third-degree receiving stolen property, N.J. Stat. Ann. § 2C:39-5(b); and fourth-degree possession of a prohibited weapon, N.J. Stat. Ann. § 2C:39-3(f).

[3] Third-degree conspiracy to commit theft, N.J. Stat. Ann. § 2C:5-2 and § 2C:20-3; and third-degree theft, N.J. Stat. Ann. § 2C:20-3(a).

("Motion to Suppress" or "the Motion"). Petitioner nevertheless proceeded with the Motion, arguing that the police officer who discovered the evidence was not lawfully in the room to observe the evidence in plain view.

In a comprehensive October 28, 2005 ruling, Judge Francis P. DeStefano denied the Motion. (ECF No. 4-20 at 35-42.)

Petitioner then entered an open-ended guilty plea as to all charges, preserving his right to appeal the denial of his Motion to Suppress. The State filed a motion for an extended-term sentence pursuant to N.J. Stat. Ann. § 2C:44-3(d). At the plea hearing, Petitioner acknowledged that based on a prior armed robbery conviction, he was eligible for a mandatory extended-term sentence pursuant to the Graves Act. The court warned Petitioner that by accepting an open-ended plea agreement, he faced a possible term of life imprisonment subject to NERA.

In Petitioner's presence at a sentencing hearing on November 9, 2006, trial counsel represented that he reviewed the extended-term issue with his client "several times," and Petitioner understood he was eligible for a mandatory extended-term sentence due to his prior armed robbery conviction. Counsel and Judge DeStefano then discussed the issue at length in Petitioner's presence. The Judge granted the State's motion and imposed a thirty-year term of imprisonment subject to NERA.

Petitioner appealed his conviction, arguing that Judge DeStefano erred in denying his Motion to Suppress. He also argued his sentence was excessive but did not dispute that he was eligible for a mandatory extended-term sentence pursuant to the Graves Act. The Appellate Division affirmed the conviction substantially for the reasons Judge DeStefano stated in denying Petitioner's Motion to Suppress. The Appellate Division also affirmed Petitioner's sentence. The New Jersey Supreme Court denied certification. *State v. Bermudez*, 205 N.J. 79 (2011).

Petitioner subsequently filed a PCR petition, arguing that his trial lawyer rendered ineffective assistance of counsel ("IAC") by failing to inform him of the motion for an extended-term sentence and his right to a hearing to establish the basis for his extended-term eligibility. Petitioner also asserted that trial counsel misadvised him that if he rejected the twenty-year plea offer he would only face a discretionary extended-term sentence, which he could avoid by pleading to an open-ended sentence.

In an August 8, 2012 oral opinion, Judge Anthony J. Mellaci, Jr. denied the PCR petition. Judge Mellaci determined that "[Petitioner] absolutely understood what he was facing with an open-ended plea," and raised no challenge on direct appeal about his eligibility for a mandatory extended-term sentence pursuant to the Graves Act. Judge Mellaci found that because Petitioner did not dispute the fact of his prior Graves Act conviction, there were no grounds for a hearing to contest the basis for his extended-term eligibility. Judge Mellaci also found that Petitioner knew he was eligible for a mandatory extended-term sentence pursuant to the Graves Act based on his prior armed robbery conviction and also knew he faced a mandatory extended term of life imprisonment subject to NERA. Judge Mellaci, accordingly, concluded that Petitioner failed to establish either prong of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, Judge Mellaci concluded that Petitioner failed to establish that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. (ECF No. 4-15 at 1-5.)

## B.     Petition for Writ of Habeas Corpus

Ground One of the Petition contends: "Petitioner failed to receive adequate legal representation since, as a result of counsel's failure to accurately advise him, he rejected the State's plea offer and instead pursued a Motion to Suppress which lacked merit, thereafter pleading

open-ended and receiving a mandatory extended term involving 30 years, significantly greater than the 20 year term he had turned down." (ECF No. 1 at 5, 17 ("Ground One").) Ground Two of the Petition contends: "[The] [t]rial court erred in denying the petition for [PCR] without affording an evidentiary hearing to fully address [Petitioner's] contention he failed to receive adequate legal representation." (*Id.* at 7, 17-18 ("Ground Two").)

On November 18, 2016, Respondents filed an Answer (ECF No. 29), arguing that Ground One is procedurally defaulted because Petitioner did not raise his IAC claim in state court. (ECF No. 4 at 7.) Respondents argue that Ground Two contests the sufficiency of evidence the state court relied upon in making findings of fact as to Petitioner's knowledge of his extended term eligibility. Respondents contend those findings of fact are entitled to 28 U.S.C. § 2254(e)(1)'s presumption of correctness. (ECF 4 at 8.)

After considering the Petition, the Respondents' Answer (ECF No. 4), the Petitioner's Reply (ECF No. 5), and the record of proceedings in this matter, this Court on September 1, 2016 issued a Memorandum Order ("September 2016 Order") allowing the parties to expand the record to address the question of whether good cause exists to excuse Petitioner's procedural default on his ineffective assistance of counsel claims. (ECF No. 6 at 5 (the parties may "submit any evidence that would tend to show: (1) whether PCR counsel was deficient in pursuing Petitioner's ineffective assistance claim with regard to the initial plea offer; and (2) whether trial counsel offered adequate advice during negotiations of the initial plea offer").) The factual background and procedural history of this matter as set forth in the September 2016 Order (*id.* at 1-2) are incorporated herein by reference.

In response to the September 2016 Order, Petitioner submitted the following on November 4, 2016 (ECF No. 8-1 at 1-3, 68): (1) the October 21, 2016 Certification of William T. Donegan,

Esquire ("Mr. Donegan") (ECF No. 8-1 at 1-2), who was Petitioner's attorney during his application for PCR following his armed robbery and related crimes conviction; and (2) Mr. Donegan's April 30, 2012 Letter Brief and Appendix in Support of Defendant's Petition for PCR (ECF No. 8-1 at 3-64).

On November 9, 2016, this Court issued an Order to Show Cause why it should not grant Petitioner an evidentiary hearing on his ineffective assistance of counsel claim. (ECF No. 9.) Respondents submitted a November 18, 2016 letter brief. (ECF No. 10.) Petitioner submitted a pro se brief expanding the record and attaching his 2007 pro se PCR application. (ECF No. 16-1.) Petitioner then submitted supplemental correspondence on October 2, 2017. (ECF No. 17.)

The Court has carefully considered the pleadings and the voluminous state record in this matter. For the reasons set forth below, the Court, with respect to Ground One, shall conduct an evidentiary hearing on the limited factual question of what Petitioner's trial counsel communicated to him—prior to the October 28, 2005 Motion to Suppress hearing—regarding the mandatory versus discretionary nature of the extended term to which he was subject under the Graves Act, N.J. Stat. Ann. § 2C:44-3(d). The Court finds that Ground Two lacks merit because infirmities in a state PCR proceeding do not raise constitutional questions in federal habeas actions; Ground Two is thus denied in its entirety.

## III. HABEAS CORPUS – STANDARD OF REVIEW, EXHAUSTION, AND PROCEDURAL BAR

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When a claim has been adjudicated on the merits in state court proceedings, a writ of habeas corpus shall not issue

unless the adjudication of the claim, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *see also Parker v. Matthews*, 567 U.S. 37, 40 (2012); *Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015) (citing § 2254(d)). With respect to § 2254(d)(1), "clearly established law includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). With respect to § 2254(d)(2), a state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). Furthermore, federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 562 U.S. 594, 598 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013).

A court may not grant a writ of habeas corpus on a New Jersey conviction challenge unless the petitioner has "exhausted the remedies available in the courts of the State" under § 2254(b)(1)(A) by fairly presenting each federal ground that is raised in the petition to all three levels of the New Jersey courts (i.e., the Law Division, the Appellate Division, and the New Jersey Supreme Court) or exhaustion is excused under § 2254(b)(1)(B). *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of

prisoners' federal rights.'" *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (citation omitted)).

Even when a petitioner properly exhausts a claim, however, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)); *see also Gray v. Netherland*, 518 U.S. 152 (1996); *Coleman v. Thompson*, 501 U.S. 722 (1991).

If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)). The default-related state rule in this case is New Jersey Court Rule 3:22-4, which provides: "Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey."

## IV.    DISCUSSION

### A.    Ground One of the Petition: Ineffective Assistance of Counsel Claims

At the October 28, 2005 hearing on Petitioner's Motion to Suppress, Petitioner expressly confirmed on the record that, among other things, he: (1) knew he was extended-term eligible;

(2) wanted to reject the State's twenty-year plea offer, and (3) wished to pursue the Motion even though he knew that the State would withdraw its plea offer if he did so. (ECF No. 4-20 at 3.)

At the December 5, 2005 plea cutoff hearing, Petitioner's counsel confirmed that the prosecutor told him "prior to the Motion to Suppress, that if we proceed with the Motion, the 20-year NERA offer was going to be withdrawn and there would be no plea offer. Mr. Bermudez and I discussed that. He decided to go ahead with the Motion to Suppress." (ECF 4-21 at 2-3.) Judge DeStefano stated: "Since there's no offer, you might as well go to trial, Mr. Bermudez, because they're not going to offer you anything anyway. So if you get convicted, you get up to life imprisonment with either 25 or 30 years of parole ineligibility ..." (*Id.* at 3.)

After denial of his Motion to Suppress, Petitioner entered an open-ended plea on August 17, 2006. (ECF 4-22 at 4.) Petitioner told the court that he had read the Plea Form with his counsel and understood it. (ECF No. 4-22 at 5-6.)

On that signed Plea Form (ECF No. 4-13 at 45-49), he acknowledged that: (1) the minimum mandatory period of parole ineligibility was seventeen years; (2) the maximum period of parole ineligibility could be sixty-two years and fourteen days; and (3) his guilty plea meant it was "almost certain that you will go to state prison." (ECF No. 4-13 at 48.)

On his signed Supplemental Plea Form for NERA Cases (ECF No. 4-13 at 50), Petitioner stated that he understood his guilty plea meant service of 85% of the sentence imposed before he would be eligible for parole. (*Id.*)

At the August 17, 2006 plea hearing, and in response to the court's direct questions to him, Petitioner expressly stated no less than five times that he understood, among other things: (1) his extended-term eligibility; (2) the possibility of life imprisonment; (3) that if he received a life term, he would have to serve sixty-three and one half years before being considered eligible for parole;

and (4) that if he received anything less than a life term, he would have to serve eighty-five percent of that term length before being considered eligible for parole. (ECF No. 4-22 at 7-9.)

At the November 9, 2006 sentencing, Judge DeStefano asked Petitioner's counsel if he had reviewed the presentence report with his client. Counsel confirmed that he had done so and Petitioner "concede[s] that he is eligible for that extended term sentencing. We understand, due to his prior condition, it is mandatory." (ECF No. 4-23 at 2, 9-10.) On November 29, 2006, Petitioner received a sentence of thirty years with an 85% parole bar. (ECF 4-24 at 15-16.)

In this habeas proceeding, the parties dispute whether there have been variations in the "supporting facts" (ECF No. 4 at 4; ECF No. 16 at 2) that Petitioner has used to frame his IAC claims during his 2007 PCR petition, 2011 pro se PCR petition, 2012 PCR petition by his counsel, 2013 PCR appeal, and 2015 habeas petition. Since the procedural history of the IAC claims presented to the state courts and the facts used to assert those claims now inform the procedural default issues under consideration for habeas relief purposes, this Court will briefly review their history to frame consideration of Ground One of the Petition:

(1) ***2007 PCR Petition's IAC Claims: (a) Mis-Advice to Reject Plea Offer Because it Was the Maximum Exposure; (b) No Notice of Extended Term Possibility; (c) Mis-Advice that the Extended Term Was Discretionary; and (d) Mis-Advice that Pleading Open Ended Would Avoid the Extended Term***

Petitioner's August 2007 pro se brief in support of PCR alleged: "Defense counsel was ineffective in evaluating a plea bargain and advising Defendant concerning it." He offered these four factual contentions to support this IAC contention:

> [1] Prior to a motion to suppress evidence, defense counsel was advised by State prosecutor that if Defendant proceeded with such motion, state would withdraw its plea bargain of 20 years with 85%. Defendant's counselor advised that plea bargain was actually maximum sentence exposure for crime. [This allegation is referred to in this Opinion as Petitioner's "2007-PCR Plea-Claim."]

[2] Defense counsel failed to advise of extended term possibility, all of which was done with counselor's knowledge of Defendant's past Graves Act conviction. At plea cutoff, Defendant was advised of the extended term possibility. [This allegation is referred to in this Opinion as Petitioner's "2007-PCR Extended-Term Claim."]

[3] Also told that extended terms were discretionary with the courts. [This allegation is referred to in this Opinion as Petitioner's "2007-PCR Mandatory/Discretionary-Claim."]

[4] Counselor advised Defendant that he would avoid such extended terms by pleading guilty open ended. [This claim is referred to in this Opinion as Petitioner's "2007-PCR Term-Avoidance Claim."]

(ECF No. 16-1 at 12-13) ("Defendant asserts that had he been properly advised as to actual sentence exposure, he would have accepted the State's offer or exhausted his rights to trial").)

### (2) *2011 Pro Se PCR Petition's IAC Claims: (a) No Notice of Right to a Hearing; and (b) Inaccurate Advice Concerning Mandatory Versus Discretionary Nature of Extended Term*

The first ground of Petitioner's August 2011 pro se PCR petition arose from his claims that his trial counsel: (a) did not advise him of the right to an extended term hearing to contest his prior Graves Act offense (this allegation is referred to in this Opinion as Petitioner's "2011-PCR Hearing-Claim"); and (b) incorrectly told him that the extended term was discretionary (not mandatory) (this allegation is referred to in this Opinion as Petitioner's "2011-PCR Mandatory/Discretionary-Claim"). (ECF No. 4-12 at 10-11) ("Noticeably absent is any inquiry of petitioner, informing him of his right to contest the prior Graves Act offense. More importantly the record fails to show the petitioner knowingly and voluntarily waived his right to the extended term hearing").)

(3) **_IAC Claims of 2012 PCR Petition by Counsel: (a) No Notice of Right to a Hearing; and (b) IAC Concerning Mandatory Versus Discretionary Nature of Extended Term_**

The April 30, 2012 PCR brief of Petitioner's counsel, Mr. Donegan, expressly incorporated by reference the facts set forth in Petitioner's August 2011 pro se brief. (ECF No. 4-13 at 97.) In May 2012, Petitioner then submitted a Certification supporting his 2011 PCR application, alleging:

> (1)     Neither my plea counsel nor the court informed me that I had a right to a hearing to controvert evidence of the state prior to being sentenced to an extended term" [referred to herein as Petitioner's "2012-PCR Hearing-Claim"][;] and
>
> (2)     [P]lea counsel provided gross mis-advice that the extended term I might be eligible for was merely discretionary with the court and not mandatory [referred to herein as Petitioner's "2012-PCR Mandatory/Discretionary-Claim"].

(ECF No. 4-13.)

At the August 8, 2012 PCR hearing, Judge Mellaci denied relief and stated:

> [D]efendant absolutely understood what he was facing with an open-ended plea. It's covered in detail, the type of charge that he's pleading guilty to was covered in detail . . . It was directly asked of him and he responded in the affirmative at his plea . . . In this case, as the record clearly indicates, defendant was aware of the penal consequences of his plea. Defendant was advised that he was eligible for the mandatory extended-term sentence pursuant to the Graves Act ... Thus, defendant was aware of the penal consequences of his plea. Further, the extended-term hearing ... is a statutory right, not a fundamental right that requires a comprehensive inquiry of the defendant in a waiver on the record. [T]here was no error by the trial court for failing to inform defendant on the record of his right to a hearing to contest his prior conviction for a Graves Act offense.

(ECF No. 4-25 at 9, 15-16) (citing specific testimony and pages from the plea transcript).

As to Petitioner's PCR Hearing-Claim, Judge Mellaci found that "these issues could have been reasonably raised in defendant's direct appeal." (*Id*. at 21.)

As to Petitioner's PCR Mandatory/Discretionary-Claim, Judge Mellaci ruled that "the record clearly contradicts defendant's argument." (*Id*. at 25) (citing Petitioner's acknowledgment

at the Motion hearing that he was subject to extended term exposure; plea counsel's in-court representation that he discussed the plea offer with Petitioner; Petitioner's signature on the pretrial memorandum that indicated extended term exposure was mandatory; and the "fact defendant was expressly advised during the plea hearing that his open-ended pleas exposed him to the mandatory extended term of up to life imprisonment and defendant stated that he understood. At no time in the proceedings did defendant contest his mandatory extended-term eligibility").

Judge Mellaci also challenged Petitioner's criticisms of plea counsel, finding that Petitioner had demonstrated neither *Strickland* prong:

> [I]t strains credibility to accept defendant's contention that he believed he would avoid an extended-term sentence if he pled open-ended, as he was fully aware of his exposure prior to the expiration of the State's plea offer and beyond ... [T]his court finds there was no misadvise. Even assuming defendant's contentions are true, his sentencing under discretionary extended-term sentence would have been between the 10 years and life imprisonment subject to NERA ... Defendant received a custodial term of 30 years subject to NERA. Therefore, defendant cannot now complain that he would have taken the State's plea offer when his actual sentence was within the range communicated to him by plea counsel.

(ECF No. 4-25 at 25-26.)

### (4) *2013 PCR Appeal's IAC Claims: (a) Plea Offer Rejection; (b) Pursuit of Motion to Suppress; and (3) Entry of Open-Ended Plea*

On appeal of Judge Mellaci's PCR denial, Petitioner argued that trial counsel was deficient in advising him to: (a) reject the twenty-year plea offer; (b) pursue the Motion to Suppress; and (c) enter an open-ended plea (these three allegations are referred to in this Opinion as Petitioner's "PCR-Appeal Claims"). (ECF No. 4-15 at 6.) The *Bermudez II* court found these claims procedurally defaulted because Petitioner raised them for the first time on appeal. (*Id.*)

(5) ***Habeas Petition's IAC Claims: (a) Mis-Advice to Reject State's Plea Offer; (b) Inaccurate Counsel that Plea Agreement was the Maximum Penal Exposure; (c) Inaccurate Counsel that Extended Terms Are Discretionary with Courts; and (d) Deficient Counsel that Extended Term Could Be Avoided Via Open-Ended Plea***

Ground One of the habeas Petition arises from these factual contentions:

[1]    As a result of counsel's failure to accurately advise him, [Petitioner] rejected the State's plea offer and instead pursued a Motion to Suppress which l[a]cked merit. . . . Trial counselor advised [P]etitioner that plea agreement was actually the maximum time exposure [referred to herein as Petitioner's "Habeas Plea-Claim"][;]

[2]    [V]ery few meet the requirements of extended terms [w]hich are also discretionary with the courts [referred to herein as Petitioner's "Habeas Mandatory/ Discretionary-Claim"][;] [and]

[3]    [E]xtended-term sentencing could be avoid[ed] by pleading out open ended [referred to herein as Petitioner's "Habeas Open-Ended Plea Claim"].

(ECF No. 1 at 5, 17.)

This Court's September 2016 Order (ECF No. 6 at 2) noted Respondents' contention that Petitioner had procedurally defaulted on the Habeas Plea-Claim. (ECF No. 4 at 4, 7-8 (Answer).) Allowing for the possibility that "Petitioner may be able to meet the cause and prejudice requirement for excusing a procedural default" (ECF No. 6 at 5), the Court allowed the parties to supplement the record on that point. Petitioner submitted various items. This Court will summarize their particulars here, as they relate to: variations of Petitioner's IAC claims over time; which versions and which supporting facts he submitted to which state courts; and the procedural bar issue now confronting this Court:

(a) The October 21, 2016 Certification of Mr. Donegan, in which he summarizes the IAC claims asserted to the PCR court in PCR counsel's brief. Mr. Donegan further states: "I [told] the PCR court that I had no obligation to . . . contact plea counsel to agree that he was ineffective . . .

[because] that is the whole purpose of ordering an evidentiary hearing . . . I disagree that the law requires an affidavit from plea counsel admitting deficient conduct before a prima facie case can be made out." (ECF No. 8-1 at 1-2 (filed with this Court on Nov. 4, 2016));

(b) Mr. Donegan's April 30, 2012 Letter Brief and Appendix in Support of Defendant's Petition for PCR. (ECF No. 8-1 at 3-68 (filed with this Court on Nov. 4, 2016).) The Appendix to Mr. Donegan's PCR brief included Petitioner's August 12, 2011 pro se PCR petition (*id.* at 29-54) and Petitioner's signed Plea Form (*id.* at 55-62);

(c) Petitioner's November 29, 2016 correspondence, contending that "trial counsel's advice damaged the whole plea process. Not advising [P]etitioner he was mandatory extended term eligible and that the 20 years plea offered by the state was the minimum amount of time the petitioner could receive by law deprived [Petitioner] of the information needed to make an intelligent decision concerning the plea offered by the state" (ECF No. 14 at 2); and

(d) A February 28, 2017 pro se brief in support of expanding the record (ECF No. 16 at 1-11), to which Petitioner appended his "August 8, 2007 pro se PCR [ECF No. 16-1 at 1-19] . . . as proof that the supporting facts concerning the claim of ineffective assistan[ce] of trial counsel have always been the same and are not made up and added to with every appeal as [R]espondent claims." (*Id.* at 2.) The February 28 pro se brief contends that Petitioner's 2007 pro se PCR "was the source of facts from which Mr. Donegan was to prepare a certification for the pending 2011 PCR[,] [w]hich Mr. Donegan did not do. Mr. Donegan [instead] submitted to the PCR court a concise version of the alleged acts of ineffective assistance of trial counsel with the hope that an evidentiary hearing would be granted." (ECF No. 16 at 3.) For purposes of the IAC claim discussion following immediately below in this Opinion, this Court notes that the record does not support Petitioner's contention. Contrary to Petitioner's criticism of PCR counsel, Mr. Donegan

*did* submit the 2007 pro se PCR to the 2012 PCR court. (ECF No. 4-13 at 97 ("The facts appear in Petitioner's [August 2011] pro se brief").) Petitioner holds up his 2007 pro se PCR petition as the compilation of "all available assertions of trial counsel's ineffective assistance" (ECF No. 16 at 3), and then bases his habeas IAC allegations against Mr. Donegan for PCR counsel's supposed failure to offer these facts to the 2012 PCR court. The record, however, demonstrates that PCR counsel *did* present such facts on the 2012 PCR application.

Respondents' November 18, 2016 letter brief argues that Petitioner has not established either cause or prejudice to excuse his IAC claims' procedural default. (ECF No. 10.) This Court will here summarize Respondents' position, given the procedural complexity at this stage of Petitioner's case and given that Respondents' position relates to the procedural bar issue.

First, as to the cause element, Respondents maintain that: (1) Petitioner's Habeas Plea-Claim had never been alleged in state court; specifically, Respondents argue that Petitioner never presented the state courts with the particular factual claim that plea counsel was ineffective for advising that the plea agreement was the maximum penal exposure (ECF No. 10 at 6); (2) IAC by PCR counsel, if it occurred at all, was made not by trial PCR counsel but rather by appellate PCR counsel who altered the factual bases of Petitioner's IAC Law Division claim when it was presented to the Appellate Division; ineffective assistance by appellate PCR counsel cannot constitute "cause" under the applicable cause and prejudice standard (*Martinez v. Ryan*, 566 U.S. 1, 8-9 (2012)); and (3) neither trial PCR counsel nor appellate PCR counsel raised the facts underlying Petitioner's Habeas Plea-Claim, his Habeas Mandatory/Discretionary-Claim, or his Habeas Term-Avoidance Claim; such claims should therefore be considered unexhausted and procedurally defaulted (*id*. at 9-10).

Second, as to the prejudice element, Respondents state that Petitioner has not shown the requisite "actual prejudice" by demonstrating substantial and actual disadvantage from counsel that was deficient under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 10 at 11-21.)

### (6) *Habeas Petition's IAC Claims: The Record Remains Silent As To The Prejudice Element Of Procedural Bar*

Having thus framed *supra* the unwieldly record confronting this Court, I will now consider the parties' post-September 2016 submissions as to cause and prejudice for Ground One's IAC claims. Petitioner can overcome their procedural default by showing *both*: (1) that the alleged ineffective assistance by counsel was the *cause* of the IAC claims' procedural default; and (2) that he suffered *actual prejudice* from the errors of which he complains that worked to his actual and substantial disadvantage, "infecting his entire [proceeding] with error of constitutional dimensions." *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982), *cert. denied sub. nom.*, *Holland v. Beard*, 555 U.S. 1033 (2008)). Specifically, in the IAC claim context, Petitioner must demonstrate that: (1) his counsel was ineffective under *Strickland* in failing to raise the claims in the first state collateral proceeding, (2) his underlying IAC claims are "substantial" (that is, have "some merit"), and (3) he was actually prejudiced. *See Martinez*, 566 U.S. at 13-14; *Bousley v. United States*, 523 U.S. 614, 622 (1998); *McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002), *cert. denied sub. nom.*, *Cristin v. Wolfe*, 537 U.S. 897 (2002).

As to the "cause" prong of the procedural bar analysis, the Appellate Division's ruling in *Bermudez II* informs this Court's consideration. Since counsel raised, or attempted to raise, IAC

claims before the PCR court and on direct appeal,[4] the record suggests the Appellate Division held

that such claims were procedurally defaulted because they were not *properly* raised below – i.e.,

the trial court had found that an affidavit from plea counsel Mr. Kinarney was required but was

not provided by Mr. Donegan.[5] In other words, the *Bermudez II* court found that the trial court's

rejection of the IAC claims was caused by PCR counsel's failure to file an affidavit from plea

counsel. (ECF Nos. 4-15 at 6; 4-25 at 4.) In short, the alleged ineffective assistance by PCR counsel

was the *cause* of the IAC claims' procedural default. *See, e.g., Farmer v. Wilson*, 248 F. App'x

291, 294 (3d Cir. 2007) ("On [post-conviction] appeal, [t]he Superior Court denied [the ineffective

assistance of counsel] claim because [the defendant's] then-counsel had not filed character witness

---

[4] First, the Habeas Plea-Claim was asserted by Petitioner in his initial collateral proceeding and then asserted by Mr. Donegan during the 2013 PCR appeal. (ECF No. 16-1 at 12-13 (2007 Pro Se PCR Brief ("Defense counsel was ineffective in evaluating a plea bargain and advising Defendant concerning it . . . Defendant was offered a State negotiated plea of 20 years with 85% for armed robbery 1st degree . . . Defendant's counsel advised Defendant that [the] plea bargain was [the] actually maximum sentence exposure for [the] crime"); ECF No. 4-13 at 2 (Mr. Donegan's PCR appeal brief); ECF No. 4-15 at 6 (Oct. 31, 2014 PCR court opinion).) Second, the facts underlying the Mandatory/Discretionary Claim in the habeas Petition were raised in Petitioner's 2007 pro se PCR (ECF No. 16-1 at 12-13), his 2011 pro se PCR (ECF No. 4-12 at 9-15), and Mr. Donegan's 2012 PCR brief (ECF No. 4-13 at 95-107), but not in Mr. Donegan's 2013 PCR appellate brief (ECF No. 4-13 at 34). Third, Petitioner's Habeas Term-Avoidance-Claim was one of his 2007 PCR Claims (ECF No. 16-1 at 12-13), but it was not among his 2011 pro se PCR petition (ECF No. 4-12 at 9-13) or his counsel's 2012 PCR petition (ECF No. 4-13 at 95-107).

[5] This Court also notes that New Jersey law supports this reading of the record below, since PCR courts are to resolve IAC claims only after disputed issues of fact are resolved, such as by evidentiary hearings that courts may require when they determine that such are needed to "aid the court's analysis of whether the defendant is entitled to [PCR]." *State v. Delgado*, No. A-3276-08T4, 2010 WL 4642989, at *4 (N.J. App. Div. Nov. 18, 2010); *see also State v. Jones*, 219 N.J. 298 (2014); *State v. Porter*, 216 N.J. 343 (2013) ("It is well-settled that, to the extent that a petition for [PCR] involves material issues of disputed facts that cannot be resolved by reference to the trial record, an evidentiary hearing must be held. Assessment of credibility is the kind of determination 'best made through an evidentiary proceeding with all its explorative benefits, including the truth-revealing power which the opportunity to cross-examine bestows'") (citations omitted). Here, Judge Mellaci determined the court "could not satisfy" itself as to the "advice [Petitioner] received from his plea counsel" without "an affidavit or certification from Mr. Kinarney." (ECF No. 4-25 at 3, 4.)

affidavits with his brief . . . [On habeas review,] the Commonwealth argued the Superior Court's determination that the absence of affidavits was dispositive of [the defendant's] claim means that [the defendant] has procedurally defaulted on his Sixth Amendment claim. This was the position taken by the District Court which denied [the defendant's] petition for habeas corpus on that ground. . . . [E]ffective counsel would have known of the proof required by the Pennsylvania Superior Court before it would consider the merits of a claim that counsel was ineffective for failing to call a witness . . . We can see no possible strategic reason why appellate counsel would not have attached affidavits to [the defendant's] brief. Thus, we agree with [the defendant] that he has shown the cause element needed to surmount procedural default, i.e., the ineffectiveness of appellate counsel").

Although "cause" has been shown on the record under the *Bermudez II* court's determination, Petitioner must still demonstrate the "prejudice" prong of the procedural bar analysis. The "prejudice" requirement examines whether Petitioner's substantive IAC claims have any merit. *Martinez*, 566 U.S. at 14; *Guy v. Phelps*, 950 F. Supp. 2d 746, 754, 758, 759 (D. Del. 2013) ("To demonstrate actual prejudice, a petitioner must show that errors during his trial created more than a possibility of prejudice; he must show that the errors 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'") (quoting *Murray v. Carter*, 477 U.S. 478, 488 (1986)).

As to demonstration of prejudice for each of the Plea Claim, Mandatory/Discretionary Claim, and Term-Avoidance Claim, the relevant issue is thus whether trial counsel, during negotiations of the first plea agreement, did or did not inform Petitioner that his extended term was mandatory versus discretionary prior to the Motion to Suppress hearing. The parties' submissions both before and after the September 2016 Order are silent on this point.

Neither side has submitted evidence of what trial counsel told Petitioner during negotiations of the first plea deal before the Motion to Suppress, despite this Court's express invitation to "obtain and submit any evidence that would tend to show whether trial counsel offered adequate advice during negotiations of the initial plea offer. Evidence may include but is not limited to an affidavit from the PCR and/or trial counsel." (ECF No. 6 at 5.) Petitioner's February 28, 2017 pro se brief states: "As was requested by the petitioner the certification of trial counsel Mr. Kinarney was submitted by the respondent" (ECF No. 16 at 2), but no such evidence has ever in fact been placed of record with this Court by either side in these proceedings. All evidence of record before this Court reflects that Petitioner certainly knew *after* the October 28, 2005 Motion to Suppress hearing that the extended term was mandatory[6] but there has been no evidentiary demonstration by either side as to what plea counsel told Petitioner *before* that Motion (i.e., during negotiation with the State of the first plea agreement, which Petitioner purportedly decided to reject in order to pursue the Motion). Whether Mr. Kinarney told Petitioner, during talks with the State about the first negotiated plea offer, that the extended term was mandatory, is indispensable to consideration of the first of *Strickland*'s two elements for showing ineffective assistance (i.e., deficient performance), which Petitioner has to demonstrate for the "prejudice" prong in order to overcome his IAC Claims' procedural bar.

---

[6] *See* ECF No. 4-22 at 4-6, 7-9, 15 (Aug. 17, 2006 plea transcript, where Petitioner told the court that he read the Plea Form with his counsel and understood his extended-term eligibility); No. 4-25 at 9, 15) (Aug. 8, 2012 PCR hearing transcript, citing to the plea hearing transcript); No. 4-13 (signed Plea Form); No. 4-23 at 9-10 (Nov. 9, 2006 sentencing transcript, where Mr. Kinarney told the court that: (1) he reviewed the extended term moving papers with the defendant; (2) "we concede" that the defendant is eligible for mandatory extended term sentencing; and (3) "[t]he extent of the sentence . . . is another matter . . . . [b]ut I have to concede, it meets the requirements of the law").

For this reason, and exclusively for purposes of analysis of the "prejudice" prong of excusing procedural default, the Court shall conduct an evidentiary hearing on the limited factual question of what trial counsel communicated to Petitioner—prior to the Motion to Suppress hearing—regarding the mandatory versus discretionary nature of an extended term. The Court notes that such hearing will be confined to this narrow issue and will not encompass consideration of evidence regarding Petitioner's actual substantive IAC claims. The evidentiary hearing ordered in this Opinion will not, for example, consider whether Petitioner would have accepted the State's plea offer had he been given the correct advice on the mandatory nature of the extended term. *See Cullen v. Pinholster*, 563 U.S. 170, 186 (2011) ("Section 2254(e)(2) imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing"); *Grimes v. Superintendent Graterford SCI*, 619 F. App'x 146, 149 (3d Cir. 2015) ("an evidentiary hearing should have been conducted to enable the District Court to determine if [the petitioner] can satisfy the *Martinez* prongs and establish the cause and prejudice necessary to excuse [the petitioner's] procedural default of his [ineffective assistance of trial counsel] claim") (citing *Cristin*, 281 F.3d at 413) (holding it is within district courts' plenary authority to order an evidentiary hearing on habeas petitioners' excuses for procedural default at the state level).

Therefore, because this Court is unable, based on the direct appeal and PCR records before it, to make a determination as to whether Petitioner has met the "prejudice" prong for excusing the procedural default of his IAC Claims in Ground One, an evidentiary hearing must be conducted on the limited issue of what specific advice trial counsel communicated to Petitioner, during negotiations with the State of its initial plea offer and prior to the Motion to Suppress hearing, regarding the mandatory versus discretionary nature of the extended term.

Finally, because this Court will grant Petitioner an evidentiary hearing, and because this Court has found Petitioner indigent in permitting him to proceed *in forma pauperis*, the Court is required pursuant to Rule 8(c) of the Rules Governing Section 2254 Cases to appoint counsel for Petitioner. Petitioner shall be appointed counsel pursuant to Rule 8(c) in advance of that hearing.[7]

## B.   Ground Two of the Petition: PCR Evidentiary Hearing Claim

In Ground Two, Petitioner contends that the state court erred in denying his PCR petition "without affording him an evidentiary hearing to fully address his contention that he failed to receive adequate legal representation." (ECF No. 1 at 7, 17.)

Respondents oppose Ground Two on the basis that "[P]etitioner has not demonstrated that the state courts' decision violated clearly established federal law." (ECF No. 4 at 8.) This Court agrees that Ground Two lacks merit because infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. Habeas petitioners are not entitled to relief based upon any alleged deficiencies in state PCR proceedings because purported errors in state PCR proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief. *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation . . . Federal habeas power is limited . . . to a determination of whether there has been

---

[7] Due to the time generally required to secure pro bono counsel and based on the Court's inherent authority to control the matters on its docket, the Court finds good cause to stay and administratively terminate this matter pending the appointment of pro bono counsel. The Court will lift the stay and reopen the matter upon the appointment of pro bono counsel.

an improper detention by virtue of the state court judgment"; what occurs in state collateral review proceedings "does not enter into the habeas calculation").

Thus, Ground Two does not raise claims that are cognizable in a federal habeas proceeding. Even if errors in Petitioner's state PCR proceedings (as suggested in Ground Two of the Petition) are presumed to have been present, they are irrelevant to the instant habeas matter because they were collateral to Petitioner's conviction and sentence and thus cannot give rise to a claim for federal habeas relief. *See Hassine*, 160 F.3d at 954; 28 U.S.C. § 2254(i).

Thus, Ground Two is denied for failure to assert a violation of Petitioner's federal rights.

## V.    **CONCLUSION**

For the reasons expressed in this Opinion, the Court: (1) will conduct an evidentiary hearing on the limited issue of what advice trial counsel communicated to Petitioner, during negotiations with the State of its initial plea offer and prior to the Motion to Suppress hearing, regarding the mandatory versus discretionary nature of the extended term. Such hearing shall be conducted exclusively to determine whether Petitioner has met the "prejudice" prong for excusing the procedural default of his claims in Ground One; and (2) denies the § 2254 Petition as to Ground Two.

An appropriate Order follows.

s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated:  June 18, 2019